UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DALTON JOSEPH LEMELLE, JR. AND PATTIE J. LEMELLE | CIVIL ACTION NO. 6:21-cv-04377 |
| VERSUS | JUDGE SUMMERHAYS |
| BASILE CARE CENTER, INC. | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Defendant Basile Care Center, Inc. filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Rec. Doc. 8). The motion was opposed, and resolution of the motion would require analysis of documents not referenced in or attached to the plaintiff's complaint. Therefore, this Court converted the motion to dismiss to a motion for summary judgment and afforded the parties an opportunity to brief the relevant issues. (Rec. Doc. 16). The defendant filed a memorandum in support of summary judgment (Rec. Doc. 17), and the plaintiffs filed an opposition brief (Rec. Doc. 22). The motion for summary judgment was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. (Rec. Doc. 21). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion for summary judgment should be granted and this matter should be dismissed as premature.

## Background

Dalton Joseph Lemelle, Sr. lived at Basile Care Center, a nursing home in Evangeline Parish, Louisiana, from July 2019 until he died on November 14, 2020. Following Mr. Lemelle's death, his son and daughter, Dalton Joseph Lemelle, Jr. and Pattie J. Lemelle, sued the nursing home, alleging that Mr. Lemelle's death was the result of the nursing home's "fault, negligence[,] and/or breach of the appropriate standard of care."[1]  More specifically, the plaintiffs alleged that Basile either failed to create a plan for Mr. Lemelle's care or failed to follow it,[2] "failed to provide the proper level of nursing care, hydration, nutrition, and repositioning,"[3] failed to transfer Mr. Lemelle to a different facility,[4] "failed to provide Mr. Lemelle with the specific services ordered by his physician,"[5] and "failed to provide Mr. Lemelle with the level of care necessitated by his medical condition."[6]  The plaintiffs also alleged that Mr. Lemelle's death was caused by the nursing home's failure "to provide 24-hour nursing services seven days a week, adequate in quality and amount, to assure

---

[1]     Rec. Doc. 1-2 at 4.

[2]     Rec. Doc. 1-2 at 3.

[3]     Rec. Doc. 1-2 at 3.

[4]     Rec. Doc. 1-2 at 3.

[5]     Rec. Doc. 1-2 at 4.

[6]     Rec. Doc. 1-2 at 4.

that Mr. Lemelle received the appropriate care."[7] The plaintiffs asserted claims under Louisiana state law and filed their lawsuit in a Louisiana state court. They asserted a survival action, a wrongful death claim, and a claim for violation of the Louisiana Nursing Home Residents' Bill of Rights.[8] They expressly denied that they were asserting a medical malpractice claim.[9]

Basile removed the case to this forum then filed its motion to dismiss. Basile argued that the plaintiffs asserted both tort claims and medical malpractice claims and further argued that the plaintiffs' claims were premature because the plaintiffs failed to exhaust their administrative remedies by convening a medical review panel before filing suit, as required by Louisiana's Medical Malpractice Act ("MMA").[10] Basile also argued that the plaintiffs could not bring a claim under the Louisiana Nursing Home Bill of Rights because that statute allows only injunctive relief.

In opposition to the motion, the plaintiffs argued that they asserted claims under the general negligence provisions of Louisiana law and the Nursing Home Bills of Rights, but did not assert medical malpractice claims that would trigger the necessity for a medical review panel. More specifically, they argued that their claims

---

[7] Rec. Doc. 1-2 at 4.

[8] La. R.S. 40:2010.8.

[9] Rec. Doc. 1-2 at 4.

[10] La. R.S. 40:1231.1, *et seq.*

"relate[] to the custodial, nonprofessional care of Mr. Dalton Lemelle in his capacity as a resident and that no claim for medical malpractice is being asserted."[11]

Recasting its motion to dismiss as a motion for summary judgment, Basile submitted evidence establishing that it was a qualified health care provider subject to the MMA at relevant times (Rec. Doc. 17-1) and argued that the plaintiffs asserted medical malpractice claims in their complaint that must be presented to a medical review panel before a suit can be filed.

In response, the plaintiffs argued that they should be allowed to conduct discovery before the motion for summary judgment is resolved, that they asserted claims under the Louisiana Nursing Home Bill of Rights and a comparable federal statute[12] but no medical malpractice claim, and that they can assert a claim under the Louisiana Nursing Home Bill of Rights because such claims are heritable.

## Law and Analysis

### A. The Standard for Evaluating a Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the

---

[11] Rec. Doc. 11 at 2. See, also, Rec. Doc. 11 at 4.

[12] The plaintiffs' complaint did not contain a claim under any federal statute, and they cannot assert any such new claim in a memorandum opposing a motion for summary judgment. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (emphasis added) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[13] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[14] The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[15] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[16] All facts and inferences are construed in the light most favorable to the nonmoving party.[17] If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[14] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[15] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[16] *Washburn v. Harvey*, 504 F.3d at 508.

[17] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

nonmoving party's claim.[18] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[19]

### B. Basile was a Qualified Health Care Provider at Relevant Times

The MMA requires that medical malpractice actions against qualified health care providers must be brought before a medical review panel before being asserted in a court of law.[20] Thus, a medical malpractice claim is premature and must be dismissed for failure to exhaust administrative remedies when filed in court without having gone through the medical review panel process. In support of its motion for summary judgment, Basile argued that it was a qualified health care provider at relevant times. Basile must bear the burden of proof on this point.[21]

The term "health care provider" is defined in the MMA to include entities licensed or certified by the state to provide health care such as nursing homes.[22] A health care provider is "qualified" under the MMA only if it meets the statutory definition of the term "health care provider," has filed proof of financial

---

[18] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[19] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[20] La. R.S. 40:1231.8(A)(1)(a).

[21] See, e.g., *Thomas v. Nexion Health at Lafayette, Inc.*, 2014-609 (La. App. 3 Cir. 01/14/15), 155 So.3d 708, 710 (citing *Rivera v. Bolden's Transp. Service, Inc.*, 2011-1669 (La. App. 1 Cir. 06/28/12), 97 So.3d 1096, 1099).

[22] La. R.S. 40:1231.1(A)(10).

responsibility with the Patient's Compensation Fund, and has paid the required surcharge.[23]

In support of its motion for summary judgment, Basile submitted the affidavit of its administrator, Freddie Joseph Arceneaux, in which he averred that Basile is a qualified health care provider under the MMA. (Rec. Doc. 17-1 at 1). Attached to Mr. Arceneaux's affidavit was a certificate showing that Basile was enrolled in the Patient's Compensation Fund from October 1, 2020, to October 1, 2021, during which time period Mr. Lemelle passed away. (Rec. Doc. 17-1 at 3). The plaintiffs presented no evidence to the contrary. Accordingly, this Court finds that Basile was a qualified health care provider at relevant times.

## C. The Plaintiffs Asserted Medical Malpractice Claims

In support of its motion for summary judgment, Basile argued that some of the claims asserted against it by the plaintiffs were medical malpractice claims. The plaintiffs contended to the contrary that they did not assert a medical malpractice claim, characterizing their claims as solely related to the nursing home's custodial, nonprofessional care of Mr. Lemelle. However, "the fact that a plaintiff may have made allegations sounding in both medical malpractice and general tort law does not remove the petition from the penumbra of the MMA, if a claim for medical

---

[23] La. R.S. 40:1231.2(A). See also *Luther v. IOM Co. LLC*, 2013-0353 (La. 10/15/13), 130 So.3d 817, 824.

malpractice is stated."[24]  Therefore, whether the plaintiffs asserted a valid claim under the Louisiana Nursing Home Residents' Bill of Rights is immaterial to whether they asserted one or more medical malpractice claims.

Whether a claim sounds in medical malpractice is a question of law, and the burden of proof is on the health care provider to show that it is entitled to a medical review panel because the allegations against it fall within the scope of Louisiana's medical malpractice law.[25]  The MMA defines the term "malpractice" as

> any unintentional tort or any breach of contract based on health care or professional service rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider. . . in the training or supervision of health care providers. . . .[26]

The MMA defines the term "health care" as

> any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement . . . .[27]

---

[24] *Dutrey v. Plaquemine Manor Nursing Home*, 205 So.3d 934, 945, 2012-1295 (La. App. 1 Cir. 06/17/13), 205 So.3d 934, 945 (citing *McKnight v. D & W Health Services, Inc.*, 02-2552 (La. App. 1 Cir. 11/7/03), 873 So.2d 18, 23)).

[25] See, e.g., *Miller v. Acadian Ambulance Service, Inc.*, 2013-1269 (La. App. 3 Cir. 03/05/14), 134 So.3d 250, 254, writ denied, 2014-0698 (La. 2014), 139 So.3d 1028.

[26] La. R.S. 40:1231.1(A)(13).

[27] La. R.S. 40:1231.1(A)(9).

The Louisiana Supreme Court recognized six factors for determining whether conduct constitutes medical malpractice:

[1] whether the particular wrong is treatment related or caused by a dereliction of professional skill;

[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

[3] whether the pertinent act or omission involved assessment of the patient's condition;

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

[5] whether the injury would have occurred if the patient had not sought treatment; and

[6] whether the tort alleged was intentional.[28]

When the allegations set forth in the plaintiffs' complaint are compared against these factors, the inescapable conclusion is that the plaintiffs have asserted medical malpractice claims. The first factor to be considered is whether the acts or omissions alleged by the plaintiffs is treatment related or caused by a dereliction of professional skill. The plaintiffs expressly alleged that Basile failed to provide the proper level of nursing care (Rec. Doc. 1-2 at 3), failed to provide the level of care necessitated by Mr. Lemelle's medical condition, (Rec. Doc. 1-2 at 4), failed to

---

[28] *Coleman v. Deno*, 2001-1517 (La. 01/25/02), 813 So.2d 303, 315-16.

provide the services ordered by Mr. Lemelle's physician (Rec. Doc. 1-2 at 4), and failed to provide 24-hour nursing services seven days a week (Rec. Doc. 1-2 at 4). These are all allegations that appropriate professional skill was not provided. The plaintiffs argued, however, that their claims that Basile failed to provide adequate hydration, nutrition, and repositioning of Mr. Lemelle are not medical malpractice claims but are negligence claims arising from Basile's providing custodial care for Mr. Lemelle. But Louisiana jurisprudence includes cases in which a failure to provide food and water to nursing home patients was found to be a breach of the duty to provide health care and therefore treatment related.[29] Similarly, the failure to turn a bedridden patient, resulting in bedsores, has been found to be a breach of the duty to provide health care.[30] Keeping a stroke victim clean and dry has also been found to be health care.[31] Therefore, the plaintiffs' specific allegations regarding hydration, nutrition, and positioning can be characterized as treatment

---

[29] *Butler-Bowie v. Olive Branch Senior Care Center*, 52, 520 (La. App. 2 Cir. 02/27/19), 266 So.3d 478, 484; *Mineo v. Underwriters at Lloyds, London*, 2007-0514 (La. App. 4 Cir. 10/22/08), 997 So.2d 187.

[30] *Butler-Bowie v. Olive Branch Senior Care Center*, 266 So.3d at 484; *Hubbard v. North Monroe Med. Ctr.*, 42,744 (La. App. 2 Cir. 12/12/07), 973 So.2d 847, writ denied, 2008-0101 (La. 3/7/08), 977 So.2d 907; *Mitchell v. Rehabilitation Hosp. of New Orleans Inc.*, 2006-0910 (La. App. 4 Cir. 2/14/07), 953 So.2d 75, writ denied, 2007-0569 (La. 9/26/08), 992 So.2d 975.

[31] *Evans v. Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C.*, 51,651 (La. App. 2 Cir. 09/27/17), 244 So.3d 737, 747, writ denied, 231 So.3d 639 (La. 12/15/2017).

related. This factor consequently weighs in favor of finding that the plaintiffs' asserted claims falling within the scope of the MMA.

The second factor has to do with whether expert medical evidence will be required to show that the applicable standard of care was or was not complied with. In this case, expert medical evidence will be necessary to determine whether Basile applied the appropriate standard of care in treating Mr. Lemelle. The plaintiffs alleged that Mr. Lemelle had admitting diagnoses of cerebral infarction (also known as a stroke), malnutrition, difficulty swallowing, paralysis, muscle wasting and atrophy, difficulty with speaking or understanding speech, urinary tract infection, and psychosis. Ordinary laypersons are not familiar with the type of care needed by persons with these conditions. Therefore, expert testimony will be required at trial to establish whether Basile adhered to the applicable standard of care required for the treatment of these conditions and properly cared for Mr. Lemelle. This factor consequently weighs in favor of characterizing the plaintiffs' claim against Basile as medical malpractice.

The third factor is whether the pertinent act or omission involved assessment of the patient's condition. The allegations that Mr. Lemelle did not receive proper hydration, nourishment, repositioning, or nursing care are all based on the underlying premise that Basile failed to properly assess Mr. Lemelle's condition. Similarly, the allegations that Basile failed to develop a plan to care for Mr. Lemelle

or, alternatively, failed to follow such a care plan, is premised on the nursing home's alleged failure to properly evaluate Mr. Lemelle's condition. Therefore, this factor supports a conclusion that Basile's alleged actions and omissions constituted medical malpractice.

Fourth, Mr. Lemelle would not have resided at Basile if he, or his family on his behalf, had not sought to have Basile treat him for the conditions listed by the plaintiffs as his admitting diagnoses. This factor consequently weighs in favor of classifying the plaintiffs' claim against Basile as medical malpractice.

The fifth factor is whether the injury would have occurred if the patient had not sought treatment. The plaintiffs alleged that Basile should have transferred Mr. Lemelle to a different facility. Inherent in that allegation, is the contention that Mr. Lemelle would not have suffered the alleged injuries if he had not lived at Basile. This supports a conclusion that the plaintiffs' claim against Basile sounds in medical malpractice.

Finally, because there is no allegation that Basile acted intentionally, the last relevant factor is not applicable in this case.

The plaintiffs' subjective characterization of Basile's actions as being solely related to custodial care rather than medical treatment is not binding, and cannot overcome the contrary conclusion reached when the nature of the plaintiffs' allegations are compared against the six relevant factors. Therefore, in summary,

this Court's analysis of the pertinent factors overwhelmingly weighs in favor of finding that at least some of the plaintiffs' allegations against Basile are best characterized medical malpractice claims. This Court consequently finds, as a matter of law, that the plaintiffs asserted medical malpractice claims against Basile.

Because Basile was a qualified health care provider and the plaintiffs asserted medical malpractice claims against it, this lawsuit is premature. The plaintiffs' claims must be submitted to a medical review panel before a lawsuit can be instituted.

### D. Whether the Plaintiffs Can Assert a Claim under the Louisiana Nursing Home Residents' Bill of Rights

Basile raised an important issue in its reply brief, arguing that because the Louisiana Nursing Home Residents' Bill of Rights provides only injunctive relief, a claim cannot be brought under that statute after the death of a nursing home resident. This Court advised that this issue should be briefed by the parties, and the plaintiffs presented contrary argument and evidence in their briefing. Having found, however, that the plaintiffs' claims are premature and must be presented to a medical review panel, this issue need not be resolved. Therefore, this Court pretermits resolution of this issue.

### E. The Plaintiffs' Request for Discovery

In opposition to Basile's motion for summary judgment, the plaintiffs requested additional time for discovery before resolution of that motion. But they

13

did not file a motion seeking that relief. An appropriate motion in that regard would be brought under Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) requires that, when facts are unavailable to the nonmoving party (here, the plaintiffs) that are relevant to a motion for summary judgment, the nonmoving party must file an affidavit or declaration setting forth specific reasons why it is unable to present facts that are essential to its opposition to the motion. The plaintiffs did not file an affidavit or declaration, nor did they give specific reasons why they need additional discovery in order to oppose Basile's motion for summary judgment. Therefore, their argument is procedurally defective.

More important, their argument is substantively defective. The plaintiffs stated that they "are not privy to the contract between the Decedent and Defendant to determine the specific obligations Defendant owed to the Decedent nor of detailed records to determine what specific rights were deprived or infringed upon by the Defendant."[32] But the only disputed material fact is whether Basile was a qualified health care provider at relevant times. Basile presented evidence showing that it was, and the plaintiffs presented no contrary evidence. Even if discovery were allowed, it is unlikely that the plaintiffs would be able to locate any evidence to

---

[32] Rec. Doc. 22 at 1.

refute the evidence presented by Basile. Therefore, discovery would be a futile endeavor resulting in an unproductive waste of time and resources.

Furthermore, the contract between Mr. Lemelle and Basile and the treatment notes from the time that Mr. Lemelle lived at Basile are not necessary to determine whether medical malpractice claims were asserted in the plaintiffs' complaint. The allegations of the complaint were evaluated in accordance with guidance from the Louisiana Supreme Court, and no additional evidence is necessary to support the conclusion reached by this Court. Accordingly, no discovery is needed at this time.

## Conclusion

For the foregoing reasons, this Court finds that Basile Care Center, Inc. was a qualified health care provider at relevant times and finds that the plaintiffs asserted medical malpractice claims against it. Consequently, this lawsuit is premature because it was not submitted to a medical review panel before being filed. Accordingly,

IT IS RECOMMENDED that Basile's motion for summary judgment (Rec. Docs. 8, 17) should be granted, and the plaintiffs' claims against Basile should be dismissed without prejudice as premature.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[33]

Signed at Lafayette, Louisiana, this 14th day of March 2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[33] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).